**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:26-cv-XXXXX**

IRON MAIDEN HOLDINGS LIMITED,

          Plaintiff,

   v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

          Defendants.

_____/

**<u>COMPLAINT</u>**

Plaintiff Iron Maiden Holdings Limited ("Iron Maiden" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I.      JURISDICTION AND VENUE**

1.      This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement and false designation of origin, and/or copyright infringement—under the Lanham Act pursuant to 15 U.S.C. §§ 1051, 1114, 1116, 1121, and 1125(a); Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*; and All Writs Act, 28 U.S.C. § 1651(a).

2.      This Court has original subject matter jurisdiction over Iron Maiden's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the Copyright Act, 17 U.S.C. § 501 *et seq.*; 28 U.S.C. § 1338(a)–(b); and 28 U.S.C. § 1331.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may exercise personal jurisdiction over Defendants because Defendants structure their business

activities to directly target consumers in the United States, including Florida, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers; offer shipping to the United States, including Florida; accept payment in U.S. dollars; and, on information and belief, have sold products using infringing and counterfeit versions of Iron Maiden's federally registered trademarks and/or unauthorized copies of Iron Maiden's federally registered copyrighted works, including the distinctive characters embodied therein (collectively, the "Unauthorized Products") to residents of the United States and Florida.  Each of the Defendants is committing tortious acts in the United States and Florida, is engaging in interstate commerce, and has wrongfully caused Iron Maiden substantial injury in the United States, including in Florida.

## II.      INTRODUCTION

4.      Iron Maiden filed this case to prevent e-commerce store operators who trade upon Iron Maiden's reputation and goodwill from further selling and/or offering for sale Unauthorized Products.  Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers.  E-commerce stores operating under the Seller Aliases share unique identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Iron Maiden's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to

conceal their identities, locations, and the full scope and interworking of their operation. Iron Maiden is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the Internet. Iron Maiden has been, and continues to be, irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement of its copyrighted works because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III.   THE PARTIES

5.      Plaintiff, Iron Maiden Holdings Limited, is a British corporation having its principal place of business at Matrix Studio Complex, 91 Peterborough Road, London SW6 3BU, United Kingdom, and is the owner of the trademarks and copyrights asserted in this action.

6.      Plaintiff is a recording, licensing & publishing company owned by the members of Iron Maiden, the long recognizable and acclaimed British band. Iron Maiden was founded by bassist Stephen Harris in the mid-'70s and includes band members Paul Dickinson, Michael McBrain, David Murray, Janick Gers, and Adrian Smith. The band has released seventeen studio albums and sold over 130 million albums worldwide. Over the course of 46 years, Iron Maiden has come to embody a spirit of fearless creative independence, ferocious dedication to their fans, and a cheerful indifference to their critics that has won them a following that spans every culture, generation, and time-zone.

7.      Iron Maiden's iron-clad resolve to always push the boundaries has given their career astonishing distinction. From groundbreaking performances in Poland behind the Iron Curtain in 1984 at the height of the Cold War, around South America in 1991, through the Middle

3

East and India in 2007, and Indonesia in 2011 among many others, Iron Maiden's relentless forward momentum has left an indelible impression on the globe.

8.     An award-winning documentary of Iron Maiden's life on the road (and in the air), *Iron Maiden: Flight 666*, released in 2009 and hit the No. 1 slot in the music DVD charts in 25 different countries.  The band has won countless awards such as: (1) the International ECHO music Award for Best Live Band and Best Rock/Alternative Album of 2015, (2) a Kerrang!—a music awards show in the United Kingdom—Legend Award in 2016, (3) a Kerrang! Inspiration Award in 2013, and (4) a Kerrang! Hall of Fame Award in 2005.  One of Iron Maiden's albums, *The Number of the Beast*, was voted as Best British Album Ever, and Iron Maiden also took home a Brit Award for Best British Live Act in 2009.  Furthermore, Iron Maiden's 2010 album *The Final Frontier* reached the number one spot in more than 28 countries and reached #4 on the Billboard chart in the USA.  Iron Maiden then went on to win the U.S. Grammy for Best Metal Performance at the 53rd GRAMMY Awards in 2011.  Needless to say, Iron Maiden's story is one of gritty determination and courageous defiance of the naysayers.

9.     Before the Defendants' acts described herein, Iron Maiden registered a multitude of works related to its musical releases with the United States Copyright Office, including the artwork shown below (the "Iron Maiden Copyrighted Works").

| Copyright Registration Number | Artwork |
| --- | --- |
| VA0001910671 | |
| VA0001907596 | |
| VA0001909133 | |

| SR0000190942 |  |
| --- | --- |

10.     The Iron Maiden Copyrighted Works are registered with the United States Copyright Office.  True and correct copies of the records from the U.S. Copyright Office website for the Iron Maiden Copyrighted Works are attached hereto as **Exhibit 1**.

11.     Among the exclusive rights granted to Iron Maiden under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Iron Maiden Copyrighted Works to the public.  Since first publication, the Iron Maiden Copyrighted Works have been used on Iron Maiden's products and are featured on Iron Maiden's official website.

12.     Iron Maiden markets and sells a variety of Iron Maiden branded products, including clothing, posters, bags, beer, toys, banners, beverage ware and other merchandise (collectively, "Iron Maiden Products").

13.     Iron Maiden Products have become enormously popular and even iconic, driven by Iron Maiden's quality standards and innovative designs.  Among the purchasing public, Iron Maiden Products are instantly recognizable as such.  The Iron Maiden brand has become a global success and Iron Maiden Products are among the most recognizable in the world.  Iron Maiden Products are distributed and sold to consumers through retailers throughout the United States, including through Plaintiff's website, www.ironmaiden.com.

14.     Plaintiff has used the IRON MAIDEN and TROOPER trademarks, and other trademarks, for many years and has continuously sold products under its trademarks (collectively, the "Iron Maiden Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the Iron Maiden Trademarks.  Plaintiff's use of the marks has also built substantial goodwill in the Iron Maiden Trademarks.  The Iron Maiden Trademarks are famous marks and valuable assets of Plaintiff.  Iron Maiden Products typically include at least one of the Iron Maiden Trademarks and/or Iron Maiden Copyrighted Works.

15.     The Iron Maiden Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 1,306,972 | IRON MAIDEN | Nov. 27, 1984 | For: Inclusion on Paper or Cardboard Products-Namely, Posters, Souvenir Concert Programs, Stickers, Calendars, Photographs and Decals in Class 016. |
| 1,307,146 | IRON MAIDEN | Nov. 27, 1984 | For: Clothing-Namely, T-Shirts, Jerseys, Sweat-Shirts, Hats, Jackets and Leather Wrist Bands in Class 025. |
| 6,624,387 | IRON MAIDEN | Jan. 25, 2022 | For: Beer in Class 032. |
| 3,840,031 | IRON MAIDEN | Aug. 31, 2010 | For: Musical sound recordings; musical video and audio recordings; digital music downloadable from the Internet in Class 009.<br><br>For: Jewelry; watches; rings in Class 014.<br><br>For: Posters; souvenir concert programs; tour books relating to musical performances; stickers; |

|  |  |  | calendars; photographs; decals; notebooks; pens; wrapping paper; binders in Class 016. |
|  |  |  | For: Backpacks; handbags; wallets in Class 018. |
|  |  |  | For: Beverage ware; bottle openers; portable beverage coolers; barware, namely, goblets, tankards; coasters not of paper and not being table linen; candle holders; flasks; mugs in Class 021. |
|  |  |  | For: Banners and flags of textile in Class 024. |
|  |  |  | For: Clothing, namely, t-shirts, tank tops, long sleeve shirts, shorts, jerseys, sweatshirts, sweatpants, pants, jackets; hats; leather wrist bands; scarves; shoes in Class 025. |
|  |  |  | For: Ornamental novelty pins; cloth patches for clothing; belt buckles in Class 026. |
|  |  |  | For: Toy planes in Class 028. |
|  |  |  | For: On-line ordering in the field of a variety of merchandise, namely, compact discs, DVDs, video cassettes, clothing, shoes, house wares, posters, canvas prints; providing a web site featuring sales information regarding a wide variety of merchandise in Class 035. |
|  |  |  | For: Entertainment services, namely, live musical entertainment performances rendered by a vocal and |

| | | | |
|---|---|---|---|
| | | | instrumental group; providing a web site featuring information relating to live performances; providing a web site featuring non-downloadable musical recordings and video recordings featuring musical performances and entertainment content of the music performers in Class 041. |
| 4,848,431 | IRON MAIDEN | Nov. 10, 2015 | For: Beers in Class 032. |
| 5,842,969 | IRON MAIDEN | Aug. 27, 2019 | For: Downloadable computer game software via a global computer network and wireless devices; downloadable computer game software; recorded computer game software in Class 009.<br><br>For: Entertainment services, namely, providing online computer games in Class 041. |
| 6,578,950 | TROOPER | Dec. 7, 2021 | For: Clothing, namely, shirts and pants; footwear; headgear, namely, hats; jackets; anoraks; trousers; skirts; shirts; T-shirts; sweatshirts; polo shirts; blouses; knitted articles of clothing and articles of clothing made from knitted materials, namely, sweaters; articles of sports clothing, namely, shirts; scarves; jeans; ties as clothing; hats; caps being headwear; baseball caps in Class 025. |
| 7,395,292 | TROOPER | May 28, 2024 | For: Beer in Class 032. |
| 7,117,485 | EDDIE | Jul. 25, 2023 | For: Downloadable computer game software via a global computer network and wireless devices; downloadable computer game software; |

| | | | |
|---|---|---|---|
| | | | recorded computer game software; downloadable films and movies featuring animation; downloadable animated cartoons in the nature of comic strips, featuring animated characters in Class 009.<br><br>For: Comics; comic books; magazines featuring animation in Class 016.<br><br>For: Clothing, namely, sweaters, hoodies; headwear, namely, beanies, baseball caps; jackets, anoraks, trousers, skirts, shirts, T-shirts, sweatshirts, polo shirts, blouses; knitted articles of clothing and articles of clothing made from knitted materials, namely, sweaters, scarves; all of the foregoing consisting of promotional goods for musical performances by a rock group in Class 025.<br><br>For: Entertainment services, namely, providing online computer games; entertainment services, namely, providing non-downloadable online animated films via a streaming video service in Class 041. |
| 7,185,385 | EDDIE | Oct. 10, 2023 | For: Downloadable computer game software via a global computer network and wireless devices; downloadable computer game software; recorded computer game software; downloadable films and movies featuring animation; downloadable animated cartoons in the nature of comic strips, featuring animated characters in Class 009. |

| | | | For: Comics; comic books; magazines featuring animation in Class 016.<br><br>For: Clothing, namely, sweaters, hoodies; headwear, namely, beanies, baseball caps; jackets, anoraks, trousers, skirts, shirts, T-shirts, sweatshirts, polo shirts, blouses; knitted articles of clothing and articles of clothing made from knitted materials, namely, sweaters, scarves; all of the foregoing consisting of promotional goods for musical performances by a rock group in Class 025.<br><br>For: Entertainment services, namely, providing online computer games; entertainment services, namely, providing non-downloadable online animated films via a streaming video service in Class 041. |
| --- | --- | --- | --- |

16. The United States registrations for the Iron Maiden Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Iron Maiden Trademarks constitute *prima facie* evidence of their validity and of Iron Maiden's exclusive right to use the Iron Maiden Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the Iron Maiden Trademarks are attached hereto as **Exhibit 2**.

17. The Iron Maiden Trademarks are exclusive to Plaintiff and are displayed extensively on Iron Maiden Products and in marketing and promotional materials. The Iron Maiden Trademarks are also distinctive when applied to Iron Maiden Products, signifying to the purchaser that the products come from Iron Maiden and are manufactured to Iron Maiden's quality

11

standards.  Whether Plaintiff manufactures the products itself or contracts with others to do so, Plaintiff has ensured that its products bearing the Iron Maiden Trademarks are manufactured to the highest quality standards.

18.     The Iron Maiden Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned.  The innovative marketing and product designs of Iron Maiden Products have enabled Iron Maiden brand to achieve widespread recognition and fame and have made the Iron Maiden Trademarks some of the most well-known marks in the music industry.  The widespread fame, outstanding reputation, and significant goodwill associated with the Iron Maiden brand have made the Iron Maiden Trademarks valuable assets of Iron Maiden.

19.     The Iron Maiden Trademarks have been the subject of substantial and continuous marketing and promotion by Iron Maiden.  Iron Maiden has and continues to market and promote the Iron Maiden Trademarks in the industry and to consumers through traditional print media, authorized retailers, the official Iron Maiden website www.ironmaiden.com, social media sites, and point of sale material.

20.     Iron Maiden has expended substantial time, money, and other resources in advertising and promoting the Iron Maiden Trademarks.  Specifically, Iron Maiden has expended substantial resources in advertising, promoting, and marketing featuring the Iron Maiden Trademarks.  Iron Maiden Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs.  As a result, products bearing the Iron Maiden Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Iron Maiden.  Iron Maiden Products have become among the most popular of their kind in the world.  The Iron Maiden Trademarks have achieved tremendous fame and

12

recognition, adding to the inherent distinctiveness of the marks.  As such, the goodwill associated with the Iron Maiden Trademarks is of immeasurable value to Iron Maiden.

21.     Iron Maiden Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Iron Maiden brand.

22.     Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Iron Maiden.  On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

23.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network.  If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV.     DEFENDANTS' UNLAWFUL CONDUCT

24.     The success of the Iron Maiden brand has resulted in significant counterfeiting of the Iron Maiden Trademarks and infringement of the Iron Maiden Copyrighted Works.  Because of this, Iron Maiden has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps.  Iron Maiden has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like AliExpress.com ("AliExpress"), Dhgate.com ("DHGate"), eBay, Inc.

("eBay"), Roadget Business Pte. Ltd. ("SHEIN"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services because of increased sales from foreign online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

25.     Because the infringing products sold by offshore online infringers do not enter normal retail distribution channels, the United States economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of infringing goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

26.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* **Exhibit 5** ("Combating Trafficking in Counterfeit and Pirated Goods," prepared by the U.S. Department of Homeland

Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020)).  The report found that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." *Id.* at 11, 22. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts.  *See id.* at 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.  *See id.* at 39.  Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]."  **Exhibit 4** at 186–87.  Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." *Id.* at 161.

27.    Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including to Florida; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Florida.

28.    Defendants concurrently employ and benefit from similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, Amazon Pay, PayPal, and/or Stripe.  E-commerce stores operating under the Seller

Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Iron Maiden has not licensed or authorized Defendants to use any of the Iron Maiden Trademarks and/or to copy or distribute the Iron Maiden Copyrighted Works, and none of the Defendants are authorized retailers of Iron Maiden Products.

29.     Many Defendants also deceive unknowing consumers by using the Iron Maiden Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to Iron Maiden Products. Other e-commerce stores operating under the Seller Aliases omit using the Iron Maiden Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Iron Maiden Products.

30.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

31.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

32.     Defendants are collectively causing harm to Iron Maiden's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression.  Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on

consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes collective harm to Iron Maiden in a way that individual actions, occurring alone, might not.

33. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by brand owners, such as Iron Maiden, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

34. Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Iron Maiden's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Iron Maiden.

35. Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and/or sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Iron Maiden, have knowingly and willfully used, and continue to use, the Iron Maiden Trademarks and/or copies of the Iron Maiden Copyrighted Works in connection with the advertisement, distribution, offering for sale, and/or sale of Unauthorized Products into the United States and Florida over the Internet.

36. Defendants' unauthorized use of the Iron Maiden Trademarks and/or Iron Maiden Copyrighted Works in connection with the advertising, distribution, offering for sale, and/or sale

of Unauthorized Products into the United States, including Florida, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Iron Maiden.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

37.     This is a trademark infringement action against certain Defendants[1] based on their unauthorized use in commerce of counterfeit imitations of the Iron Maiden Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Iron Maiden Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Iron Maiden Products offered, sold, or marketed under the Iron Maiden Trademarks.

38.     Certain Defendants have sold, offered to sell, marketed, distributed, and/or advertised; and are still selling, offering to sell, marketing, distributing, and/or advertising products using counterfeit reproductions of the Iron Maiden Trademarks without Plaintiff's permission.

39.     Plaintiff owns the Iron Maiden Trademarks.  Plaintiff's United States registrations for the Iron Maiden Trademarks are in full force and effect.  Upon information and belief, certain Defendants have knowledge of Plaintiff's rights in the Iron Maiden Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the Iron Maiden Trademarks.  Those Defendants' willful, intentional, and unauthorized use of the Iron Maiden Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

---

[1] Count I applies to all Defendants who infringed the Iron Maiden Trademarks, as outlined in Schedule A attached hereto.

40.     Certain Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41.     Plaintiff has no adequate remedy at law, and if certain Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Iron Maiden Trademarks.

42.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by certain Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

43.     Certain Defendants'[2] promotion, marketing, offering for sale, and/or sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of the Unauthorized Products by Plaintiff.

44.     By using the Iron Maiden Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, certain Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

45.     Certain Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

---

[2] Count II applies to all Defendants who infringed the Iron Maiden Trademarks, as outlined in Schedule A attached hereto.

46.     Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Iron Maiden brand if certain Defendants' actions are not enjoined.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 and 501)

47.     The Iron Maiden Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

48.     Plaintiff owns the Iron Maiden Copyrighted Works.  Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Iron Maiden Copyrighted Works.  The Iron Maiden Copyrighted Works are protected by copyright registration numbers, which were duly issued to Plaintiff by the United States Copyright Office.  At all relevant times, Plaintiff has been, and still is, the owner of all rights, title, and interest in the Iron Maiden Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

49.     The Iron Maiden Copyrighted Works are published on the internet and available to Defendants online.  As such, Defendants had access to the Iron Maiden Copyrighted Works via the internet.

50.     Without authorization from Plaintiff, or any right under the law, certain Defendants[3] have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the Iron Maiden Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products.  Certain Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Iron

---

[3] Count III applies to all Defendants who infringed the Iron Maiden Copyrighted Works, as outlined in Schedule A attached hereto.

Maiden Copyrighted Works. Such conduct infringes and continues to infringe the Iron Maiden Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

51. Certain Defendants reap the benefits of the unauthorized copying and distribution of the Iron Maiden Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

52. Certain Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Iron Maiden Copyrighted Works, including the distinctive characters embodied therein.

53. On information and belief, certain Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

54. Certain Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

55. Certain Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Iron Maiden Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from –

pursuant to 15 U.S.C. § 1116; 17 U.S.C. § 502; the All Writs Act, 28 U.S.C. § 1651(a); and Federal Rule of Civil Procedure 65:

a.  using the Iron Maiden Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an Iron Maiden Product or is not authorized by Iron Maiden to be sold in connection with the Iron Maiden Trademarks;

b.  reproducing, distributing copies of, making derivative works of, or publicly displaying the Iron Maiden Copyrighted Works in any manner without the express authorization of Iron Maiden;

c.  passing off, inducing, or enabling others to sell or pass off any products as Iron Maiden Products or any other product produced by Iron Maiden, that is not Iron Maiden's or not produced under the authorization, control, or supervision of Iron Maiden and approved by Iron Maiden for sale under the Iron Maiden Trademarks and/or Iron Maiden Copyrighted Works;

d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Iron Maiden, or are sponsored by, approved by, or otherwise connected with Iron Maiden;

e.  further infringing the Iron Maiden Trademarks and/or Iron Maiden Copyrighted Works and damaging Iron Maiden's goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner,

22

products or inventory not manufactured by or for Iron Maiden, nor authorized by Iron Maiden to be sold or offered for sale, and which bear any of the Iron Maiden Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Iron Maiden Copyrighted Works;

2) Entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms like AliExpress, DHGate, eBay, SHEIN, and Walmart shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Iron Maiden Trademarks and/or Iron Maiden Copyrighted Works;

3) That certain Defendants account for and pay to Plaintiff all profits realized by those Defendants by reason of those Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Iron Maiden Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Iron Maiden Trademarks;

5) As a direct and proximate result of certain Defendants' infringement of the Iron Maiden Copyrighted Works, Plaintiff is entitled to damages as well as those Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per

23

work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 21st day of May 2026.               Respectfully submitted,


                                              */s/ Clarissa A. Rodriguez*
                                              Clarissa A. Rodriguez
                                              Fla. Bar No. 38175
                                              Laura M. Reich
                                              Fla. Bar No. 22792
                                              HARPER MEYER LLP
                                              201 S. Biscayne Blvd., Suite 800
                                              Miami, FL 33131
                                              Telephone: (305) 577-3443
                                              Facsimile: (305) 577-9921
                                              crodriguez@harpermeyer.com
                                              lreich@harpermeyer.com

                                              *Counsel for Plaintiff Iron Maiden Holdings Limited*

24

## Schedule A

This page is the subject of Iron Maiden's contemporaneously prepared Motion to File Schedule A to the Complaint Under Seal, which Iron Maiden intends to promptly file upon the assignment of this civil case. Accordingly, this page has been redacted pursuant to L.R. 5.4(b)(1).